IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                                          No. 18-cr-1243 RB

ROBERTO TREJO,

    Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

This matter is before the Court on Mr. Roberto Trejo's (Defendant) Motion to Suppress Evidence (Doc. 40), filed August 17, 2018. The Court held a hearing on this motion on September 25, 2018. Defendant argues that ATF agents violated the Fourth Amendment when they searched an RV and backpack without his consent and discovered the ammunition he is charged with possessing, so that evidence should be suppressed. (*See* Doc. 57 at 4.) Defendant also asserts that his father, who spoke with agents prior to the search, did not have authority to consent to the search and did not voluntarily consent. (*See* Doc. 40 at 4–8.) The Government contends that Defendant does not have a reasonable expectation of privacy in the RV and thus no standing to challenge the search, and even if he did, his father's consent was valid and voluntary. (*See* Doc. 49 at 5–15.) Having considered the submissions of counsel, the record, and relevant law, the Court issues these findings of fact and conclusions of law and will **deny** this motion on the ground that Defendant does not have standing to challenge the search.

## FINDINGS OF FACT

Federal Rule of Criminal Procedure 12(d) provides that "when factual issues are involved in deciding a motion, the court must state its essential findings on the record." Fed. R. Crim. P.

12(d). At the hearing on September 25, 2018, the Court heard testimony from Mr. Roberto Trejo, Sr. (Mr. Trejo), and four ATF Special Agents: Boyd Sterling Nixon, Dennis King, Nicholas Dilello, and Jared Kattah. Based on the hearing and the record, the Court makes the following findings of fact:

1. Defendant is charged in Count 3 of the Superseding Indictment with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).

2. On June 3, 2016, ATF agents searched an RV and found nine millimeter pistol ammunition in a cabinet and loose shotgun shells inside a backpack. They also found various items identifying Defendant, including childhood photographs, nametags, and old business cards. (Gov't Exs. 7-1 through 7-20.)[1]

3. The RV was located on a lot that belonged to Defendant's father, Mr. Trejo.

4. At the time of the search, Mr. Trejo lived in a trailer on the lot with his wife and daughter. Mr. Trejo also owned the RV; he had received it from a friend around 2001.

5. The RV did not have air conditioning, plumbing, water, or utility hook-ups, but Mr. Trejo told Defendant that he could live in the RV if he fixed it up.

6. Around 2011 or 2012, Defendant installed a new door on the RV's camper area, and Defendant was the only person with a key to that door.

7. Mr. Trejo and Defendant considered the RV to be Defendant's, even though Mr. Trejo owned it. Mr. Trejo had not been inside the RV since about 2013.

8. In early 2016, Defendant visited his father's property several times a week. Sometimes he slept on the property, either in his father's trailer or, if he was drunk, in the RV.

---

[1] Unless otherwise identified, all exhibits referenced in this Order are exhibits introduced by the parties regarding the Motion to Suppress Evidence (Doc. 40) during the September 25, 2018 Motions Hearing.

9. In March 2016, Defendant and Mr. Trejo argued, and Mr. Trejo told Defendant to leave his property and obtained a Stipulated Order of Protection (the protective order).

10. The protective order was filed on March 18, 2016, and states that "[t]he terms of this order shall be effective until March 18, 2023." (Gov't Ex. 1 at 1.) The order prohibits Defendant from coming within 100 yards of Mr. Trejo and his home and workplace. (*Id.* at 3.)

11. The RV is parked approximately seven to nine yards away from Mr. Trejo's home.

12. After Mr. Trejo secured the restraining order, Defendant began living with his girlfriend, Ms. Teresa Palacios, at her mother's house. (*See* Doc. 48-1 at 00:30.)

13. Though he was aware of the terms of the protective order, Defendant entered his father's property multiple times with his father's knowledge.

14. Mr. Trejo felt he and Defendant were getting along, so he did not object to Defendant's presence on his property or call the police to enforce the protective order. They had an informal agreement that Defendant could enter the property as long as he avoided conflict, but neither party sought to amend the protective order through the court.

15. On June 3, 2016, law enforcement agents visited Mr. Trejo's property as part of their investigation into a shooting involving Ms. Palacios.

16. Mr. Trejo verbally consented to agents searching the RV, and at some point signed a consent-to-search form. (Gov't Ex. 2.) None of the ATF agents remember whether Mr. Trejo signed the form before or after the search, although getting the form signed before is standard procedure. Mr. Trejo believes he signed the consent form after the search was complete.

17. Mr. Trejo testified that agents threatened him and said they would get a warrant if he did not consent to the search.

18. Special Agent Nixon testified that the tone of his conversation with Mr. Trejo was friendly, and that the agents made no threats of any kind.

19. The other testifying ATF agents—Special Agents King, Dilello, and Kattah—were not parties to the consent conversation. They stood nearby and do not recall hearing anything threatening or confrontational.

20. Mr. Trejo showed the agents where the RV was located and suggested ways the agents might gain entrance to it.

21. The main door to the RV (the door Defendant had replaced) was locked, so agents entered through the driver's side cab door by reaching in an open window and unlocking the door.

22. Agent Nixon recorded a portion of his conversation with Mr. Trejo after the search, but did not record any of their conversation regarding consent to search the trailer.

## CONCLUSIONS OF LAW

### I. Background

Defendant argues that the ATF agents violated the Fourth Amendment prohibition on unreasonable searches and seizures when they searched the RV without his consent. (*See* Doc. 40 at 1.) He asserts that since his father "relinquished control of the [RV]" and allowed him to return even after the protective order was in place, he had a reasonable expectation of privacy in the RV. (*See* Docs. 40 at 3, 5; 57 at 4.) According to Defendant, because Mr. Trejo did not have control of the RV, he had no actual or apparent authority to consent to a search of the RV or the backpack inside it (Doc. 40 at 4, 6), and furthermore his consent was not voluntary (*id.* at 7).

The Government argues that Defendant does not have standing to challenge the search because, once the protective order was in place, he had no reasonable expectation of privacy in the RV. (Doc. 49 at 4.) Thus Defendant might have previously enjoyed a reasonable expectation

of privacy on his father's property as a guest, but that expectation was no longer reasonable once Mr. Trejo told him to leave and obtained the protective order. (*Id*.) The Government argues that, by leaving his backpack in the RV after the protective order was in place, Defendant also lost his reasonable expectation of privacy in the backpack by effectively abandoning it. (*Id*.) Finally, the Government contents that even if Defendant could establish standing to challenge the search, Mr. Trejo's consent to the search was valid and voluntary. (*Id.* at 5.)

At the hearing on September 25, 2018, Mr. Trejo and Special Agent Nixon gave conflicting accounts of the circumstances surrounding Mr. Trejo's consent to the search. While the Court does not fully credit either witness's testimony on this issue, it appears that the Government would likely not meet its burden of proof to show that Mr. Trejo's consent was voluntary.[2] This is indicated by the conflicting testimony, the lack of audio recording of the consent conversation, and the fact that agents had to access the locked RV by reaching in an open window to unlock the cab door. However, because the Court denies Defendant's Motion to Suppress on the threshold issue that he lacks standing to object to the search, it need not resolve the dispute over the validity of Mr. Trejo's consent to the search.

**II.    Legal Standard**

The Fourth Amendment to the United States Constitution provides the right to be free from "unreasonable searches and seizures." U.S. Const. amend IV. Generally, the Fourth Amendment requires that police procure a warrant before searching or seizing property. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Only those with an expectation of privacy in the place or object searched have standing to challenge a search under the Fourth Amendment. *See Rakas v.*

---

[2] The Government bears the burden of showing that Mr. Trejo's consent was voluntary under the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973) ("[when] the State attempts to justify a search on the basis of . . . consent, the Fourth . . . Amendment[] require[s] that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied").

*Illinois*, 439 U.S. 128, 133–34 (1978). A defendant invoking the Fourth Amendment bears the burden of showing both a subjective and objectively reasonable expectation of privacy in the place searched. *See United States v. Higgins*, 282 F.3d 1261, 1270 (10th Cir. 2002); *see also United States v. Cheromiah*, 455 F.3d 1216, 1220 (10th Cir. 2006) (citations omitted)). The defendant "must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

### III. The protective order makes Defendant's alleged expectation of privacy in the RV unreasonable.

The Tenth Circuit has interpreted an individual's expectation of privacy as a social or overnight guest[3] quite broadly. *See, e.g.*, *United States v. Rhiger*, 315 F.3d 1283, 1286–87 (10th Cir. 2003) (defendant had a reasonable expectation of privacy as a "social guest" because he had stayed at the home approximately four times, left personal items there, and was inside taking a nap) (citing *United States v. Pollard*, 215 F.3d 643, 647–48 (6th Cir. 2000) (defendant had expectation of privacy in a home based on occasionally spending the night, keeping personal belongings there, and sometimes eating meals with the family)); *United States v. Poe*, 556 F.3d 1113, 1119 (10th Cir. 2009) (defendant had reasonable expectation of privacy in the home he formerly shared with his girlfriend when he "finagled" a key and she allowed him to visit).

---

[3] Defendant argues that he considered the RV his "home," and as such his expectation of privacy is much higher than that of a guest in another person's home. (*See, e.g.*, Doc. 57 at 2–3 ("[Defendant] is challenging the search of his home . . . . [Defendant] lived in the RV trailer.").) However, the Court finds this argument unavailing. Even a structure considered a house or dwelling does not automatically carry an expectation of privacy unless the "individual [challenging the search] manifested a subjective expectation of privacy in the searched object, and society is willing to recognize that expectation as reasonable." *Kyllo v. United States*, 533 U.S. 27, 27–28 (2001). Thus, the Court's analysis of the relevant facts would be the same whether Defendant considered the RV his home or not.

In addition, the record shows that: (1) Mr. Trejo moved in with Ms. Palacios and her mother following the dispute with his father that led to the protective order; and (2) the RV did not have air conditioning, plumbing, water, or utility hook-ups that would make it suitable for continued habitation. It is thus unlikely that Defendant actually lived in the RV when the search occurred, but this fact is not dispositive because even social guests may have an expectation of privacy in another individual's home or property, so long as their expectation is both subjective and objectively reasonable.

However, the Tenth Circuit has not addressed the issue of whether a legal order preventing a defendant from entering a home or property invalidates an otherwise reasonable expectation of privacy in that space. Other circuits have held that whether the defendant was invited or not, a valid protection order legally prohibiting his presence negates any expectation of privacy. In *United States v. Cortez-Dutrieville*, the Third Circuit held that a defendant did not have a reasonable expectation of privacy in his girlfriend's home—even though she had invited him inside—because he was the subject of a valid protection order that prevented him from contacting her or entering the premises. *See* 743 F.3d 881–884 (3d Cir. 2014). The protective order in *Dutrieville* explicitly stated that the protected party's consent could not override the order. *Id.* at 884. According to the court, "[t]he key distinction" between the defendant and other guests "is that the protection order prohibited [the defendant] from entering the home and from having any contact with [his girlfriend]. Pursuant to Pennsylvania law, [the defendant's] mere presence in the home violated the order and exposed him to criminal liability." *Id.* at 884.

The Ninth Circuit adopted this reasoning in *United States v. Schram*, No. 17-30055, 2018 WL 4000266, at *3 (9th Cir. Aug. 21, 2018). In *Schram*, the court held that the defendant did not having standing to object to the search of his girlfriend's home because a no-contact order legally barred him from entering her home. *Id.* at *1. The defendant argued "that [his girlfriend's] consent to his presence overrode the terms of the no-contact order." *Id.* at *3. Unlike in *Dutrieville*, the Ninth Circuit did not elaborate on the specific terms of the protective order. Instead, the court ruled broadly and definitively that:

> Like a burglar, trespasser, or squatter, an individual violating a court no-contact order is on property that the law prevents him from entering. We therefore hold that such an individual lacks a legitimate expectation of privacy in that place and may not challenge its search on Fourth Amendment grounds. In doing so, we join not only the Third Circuit, but every other court that has considered the matter.

7

*Id.*

While some state statutes explicitly note that consent is no defense to the violation of a legally valid protective order,[4] the New Mexico Family Violence Protection Act does not address the issue outright. *See* N.M. Stat. Ann. §§ 40-13-1 through 40-13-12. Still, relevant statutory provisions indicate that orders may only be modified through the court process, *see* § 40-13-5(F) ("[e]ither party may request a review hearing to amend an order of protection"); and that orders can and shall be enforced at all times, *see* § 40-13-6(D) ("[a] peace officer shall arrest without a warrant and take into custody a restrained party whom the peace officer has probable cause to believe has violated and order of protection"). Nowhere do the statutes suggest that a protected party's consent to the restrained party violating an order nullifies the order or otherwise provides the violator with an affirmative defense. *See* §§ 40-13-1 through 40-13-12.

Indeed, cases that have addressed the enforcement of protective orders in New Mexico suggest that restrained parties must adhere strictly to their terms. *See, e.g.*, *State v. Nysus*, 25 P.3d 270, 272 (N.M. 2001) (no exception in a protective order for "de minimus" contact with the protected party when the order prohibited all contact); *Ballard v. Town of Clayton*, No. 10-1161, 2011 U.S. Dist. LEXIS 159943, *9 (D.N.M. Jan. 3, 2011) (when a protective order "prohibited [defendant] from going around her son and his family . . . that [the] son's address was not on the protective order is of no consequence," because "[defendant], her son, and the officer all knew that she was prohibited from going to her son's home").

Here, the Court adopts the reasoning in *Schram* and *Dutrieville*, taking note of New Mexico law emphasizing the importance of strictly enforcing protective orders, to hold that

---

[4] *See, e.g.*, Ind. Code Ann. § 34-26-5-11 ("If a respondent is excluded from the residence of a petitioner or ordered to stay away from a petitioner, an invitation by the petitioner to do so does not waive or nullify an order for protection"); Wash. Rev. Code Ann. § 26.50.035 ("The order for protection form shall include . . . 'You can be arrested even if the person or persons who obtained the order invite or allow you to violate the order's prohibitions . . . . Only the court can change the order upon written application.'").

8

Defendant did not have a reasonable expectation of privacy in the RV because he could not legally enter it. Defendant likely had a reasonable expectation of privacy in the RV prior to the protective order because he occasionally slept in the RV and used it for storage, and he was a frequent overnight and social guest on his father's property. (*See* Doc. 40 at 1.) However, the protective order rendered any continuing expectation of privacy objectively unreasonable. The RV was less than ten yards away from Mr. Trejo's trailer, so it would be impossible for Defendant to continue using the RV without violating the order.

Defendant and his father did have an informal agreement that Defendant could continue to visit the property despite the terms of the protective order. And, Mr. Trejo was within his right as a protected party to choose not to call the police each time Defendant violated the order. Still, this informal agreement did not affect the legal status of the protective order, and neither Defendant nor Mr. Trejo took steps to modify or rescind the order through the court. Repeated or "de minimus" violations of a protective order do not change the terms of the order or the weight of law behind it. *See, e.g.*, *Nysus*, 25 P.3d at 272.

### IV. The protective order also makes Defendant's alleged expectation of privacy in the backpack unreasonable.

Defendant argues that, even if he does not have standing to challenge the search of the RV, he had a reasonable expectation of privacy in the backpack left inside. (Doc. 40 at 6.) For this argument, Defendant relies on *United States v. Salinas-Cano*, in which the Tenth Circuit held that the defendant's girlfriend did not have authority to consent to a search of a closed suitcase he left in her apartment, even though she could validly consent to a search of the apartment itself. 959 F.2d 861, 865 (10th Cir. 1992). The issue in *Salinas-Cano*, however, was one of authority to consent, not standing. In holding the search invalid, the court moved beyond the threshold question of whether or not the defendant had standing to object to the search and

addressed the consent issue, implying that the defendant had an expectation of privacy in his girlfriend's apartment as a frequent overnight guest. *See id.* Then, the court held that his girlfriend could not consent to a search of the suitcase he had left behind because "[h]e did not abandon the suitcase at her home, thereby implying that she had control, but instead maintained a periodic presence in the apartment by staying there approximately two nights a week." *Id.*

The Government argues that Defendant effectively abandoned the backpack when he left the RV following the restraining order, further evidenced by the fact that he didn't retrieve it on his subsequent visits. (*See* Doc. 49 at 12.) The abandonment test is similar to the test for standing—a defendant must have a subjective belief that he has not abandoned an item, and that belief must be reasonable. *See United States v. Ojeda-Ramos*, 455 F.3d 1178, 1187 (10th Cir. 2006); *see also United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993) ("The test for abandonment is whether the defendant has retained any reasonable expectation of privacy in the property."). Again, the fact that Defendant could not legally access the backpack following the protective order suggests he no longer had a reasonable expectation of privacy in anything stored inside it.

The Third Circuit's holding in *Dutrieville* is instructive in this inquiry as well. Like Defendant, Dutrieville argued that even if he did not have a reasonable expectation of privacy in his girlfriend's *home* because of the protective order, he did have standing to challenge the search of his overnight bag inside the home. *See* 743 F.3d at 885. The court rejected this argument, explaining that "a person legally prohibited from entering a particular place cannot reasonably expect to use that place as a private repository for his personal effects . . . [because] he cannot lawfully access them." *Id.* (internal citations omitted).

Once the protective order was in place, Defendant could no longer legally return to the RV to access his backpack, and thus any expectation of privacy in the contents of the backpack is objectively unreasonable. When he left the backpack on his father's property following implementation of the protective order, he effectively abandoned it, and Defendant has not alleged that he made any attempts to ask for his belongings back or retrieve his backpack from the RV. He lacks standing to challenge the search of both the RV and the backpack inside it under the Fourth Amendment.

**THEREFORE**,

**IT IS ORDERED** that Defendant Roberto Trejo's Motion to Suppress Evidence (Doc. 40) is **DENIED.**

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**